Rockingham,
No. 5111.

CONSTANCE P. CASEY *Adm'x*

*v.*

L. M. PIKE & SON *& a.*

Argued April 2, 1963.
Decided May 28, 1963.

*Booth, Wadleigh, Langdell, Starr & Peters* (*Mr. Robert P. Booth* orally), for the plaintiff Constance P. Casey as administratrix of the estate of Edward D. Casey.

*Sheehan, Phinney, Bass, Green & Bergevin* (*Mr. William L. Phinney* orally), for the defendants L. M. Pike & Son and Robert R. Bennett.

*Devine, Millimet, McDonough, Stahl & Branch* (*Mr. Shane Devine* orally), for Vermont Hardware Co. and Marlbrough C. Lyons.

LAMPRON, J. Manchester Sand Gravel & Cement Company, employer of plaintiff's intestate, Edward D. Casey, was the prime contractor in the reconstruction of a portion of Route 10 in Enfield. Defendant Pike was a subcontractor doing the asphalt paving on the road which at the site of the accident consisted of three lanes each 12 feet in width. There was a shoulder on the east side estimated to be 8 to 10 feet wide which was being built entirely by the prime contractor.

On November 5, 1959, the day of the accident, the westerly and center lanes of the road were closed to public travel. There was one-way traffic for the public on the easterly lane. The adjacent shoulder was traveled on by trucks used to carry fill or asphalt for the construction. Manchester Sand and Gravel maintained a police officer at each end of the area under construction to control the flow of traffic.

At the time of the accident, Bennett, an employee of Pike, was operating a three-axle steel roller used in the asphalt paving procedure. Lyons, employed by Vermont Hardware, was driving a one-ton-van type body truck en route to Lebanon. Casey, plaintiff's deceased husband, was the operator of a rubber tired roller, a vehicle with five rubber tires in the front and four in the back being used to reroll the shoulder of the road.

Briefly the accident happened as follows. Lyons was proceeding northerly in the easterly lane. Bennett who was traveling southerly in the center lane crossed diagonally into the easterly lane. To avoid being hit, Lyons turned his truck to the right partly onto the shoulder. Casey was proceeding northerly on the shoulder. The

cab of his roller, which was toward the back of his vehicle, came in contact with the upper rear corner of Lyons' truck. This caused the roller to topple over a 30 foot embankment inflicting the injuries which caused Casey's death.

Even though Bennett was using the highway in the process of its reconstruction rather than as a member of the traveling public, he was nevertheless under duty to exercise due care in the operation of his self-propelled 13 to 16 ton roller. *Savoie* v. *Company*, 95 N. H. 67, 71, 72; 7 Am. Jur. 2d, Automobiles and Highway Traffic, s. 373, *p.* 921. Bennett testified that he was in the center lane when he first saw the Lyons truck which he knew was approaching him in the easterly lane. He saw the truck again while he was in the process of driving his roller from the center lane to the east lane. Nevertheless he went right ahead with his intention to cross into the easterly lane and thus headed his roller diagonally toward the oncoming truck. Bennett further testified that "if both vehicles had continued in going the way they had been there would have been a collision," and that he continued going leaving it to Lyons to get out of the way. He also testified that after seeing Casey several hundred feet south of the point of collision, he did not see him again until after the collision occurred. On this evidence the question of whether Bennett was negligent and whether his negligence caused, or contributed to cause, the accident was for the jury. *Keck* v. *Hinkley*, 90 N. H. 181; *Carter* v. *Bergeron*, 102 N. H. 464, 468, 469.

Lyons testified that he had traveled through this construction four or five times within "the last month or so." He further testified that on the day of the accident he observed roadbuilding equipment thereabout and that he knew the east lane and the shoulder were open to traffic. The police officer in charge at the south end of the project testified that as far as the public was concerned there was one-way traffic on the easterly lane only. When he directed Lyons to proceed, he told him to stay in the east lane and he would be all right. Lyons testified that his truck was equipped with a large mirror on each side which permitted him to see anything behind on the left and the right. At the speed he was going, 2 to 6 miles per hour, his truck "could stop right in its tracks practically." He testified further that he did not look in his mirrors at any time while proceeding in the east lane or before he turned his truck into the shoulder when he observed Bennett coming toward him, nor did he attempt to stop his vehicle in the east lane or sound his horn.

We are of the opinion that it was a question for the jury whether Lyons' failure to look for traffic behind him by means of the mirrors with which his truck was equipped for that purpose and his turning from the east lane in which he was traveling onto part of the adjoining shoulder constituted negligence which caused or contributed to cause the accident which occurred. *Howe* v. *Phofolos*, 85 N. H. 539; *Sullivan* v. *LeBlanc*, 100 N. H. 311, 315.

However the defendants maintain that the plaintiff should not recover because Casey was contributorily negligent as a matter of law mainly because he was passing Lyons' truck on the right instead of on the left as required by RSA 250:2 and was following it too closely contrary to the provisions of RSA 263:31, which violations, they claim, were causal. Defendants maintain further that the Trial Court was in error when it refused to instruct the jury, as requested, that Casey was subject to these statutory requirements.

Where a highway is open to public travel during construction, statutes regulating the operation of motor vehicles on public highways are applicable to vehicles using the road as part of the traveling public. *Greer Transportation Co.* v. *Knight*, 157 Md. 528; 60 C. J. S., Motor Vehicles, *s.* 266, *p.* 647. However even as to those users some of the laws of the road can be inapplicable under the existing conditions. In *Hoen* v. *Haines*, 85 N. H. 36, 39, this court held that the statute requiring an operator to turn to the right of the center of the traveled part of the road when meeting a vehicle coming in the opposite direction (RSA 250:1) was inapplicable where half of the road was closed because of bridge repairs.

On the day of the accident Casey was operating a road roller in the course of his work in the construction of the road. The use he was then making of the highway was not that made by travelers thereon but one incidental to the construction of such road. *Savin Co.* v. *Clarke*, 97 N. H. 86, 88. Furthermore the west and center lanes of the highway were closed to traffic. The east lane only was open for the use of through traffic and that under the control of officers at each end of the construction area. Because of the construction, the restricted use of the road permitted to the general public, and the nature of its use by Casey, we are of the opinion that in this case the provisions of RSA 250:2 and 263:31 did not apply to his operation of the roller at the time of the accident. *Parrish* v. *Smith*, 102 Colo. 250. The Trial

Court properly refused the requested instructions relating to these statutes. *Hoen* v. *Haines, supra;* 7 Am. Jur. 2d, Automobiles and Highway Traffic, s. 169, *p.* 724. See *Savoie* v. *Company,* 95 N. H. 67; *Kellogg* v. *Thomas,* 244 N. C. 722.

The norm to be applied to Casey's conduct was the exercise of due care under the circumstances including, among others, the particular use he was making of the highway, the requirements of his work, and the restriction and regulation of traffic by travelers on the highway. *Burroughs* v. *Corporation,* 77 N. H. 124; *Savoie* v. *Company, supra;* See Annot. 5 A. L. R. 2d 757, 761, 769, 773; *Petersen* v. *Jansen,* 236 Wis. 292, 296.

The evidence warranted the following findings. Casey was operating his roller in a northerly direction at a speed of from 5 to 7 miles per hour. He was engaged in rolling the shoulder in the process of the building of the road. Lyons was proceeding in the same direction ahead of him in the adjoining east lane of the highway. This was the only lane open to the traveling public and Lyons had been directed to stay in it. After having traveled some distance on it, Lyons, to avoid a collision with Bennett, pulled his truck to the right off the pavement partly into the 8 to 10 foot wide shoulder on which Casey was operating the roller. Lyons testified that as he pulled his truck to the right he felt a bump which proved to be the collision between Casey's roller and the right rear of his truck which resulted in Casey's death.

On this evidence it cannot be said that Casey was negligent as a matter of law and the burden of proof on this issue was on the defendants. The Trial Court was therefore correct in permitting the jury to consider the "emergency doctrine" and in denying defendants' motions for nonsuits and directed verdicts. *Berounsky* v. *Ogden,* 90 N. H. 334, 336; *Cyr* v. *Sanborn,* 101 N. H. 245, 250; *Brown* v. *Gottesman,* 103 N. H. 33, 35.

Defendants Bennett and Pike contend that the Trial Court was in error in permitting improper and prejudicial arguments by plaintiff's counsel without adequate subsequent instructions to the jury. Some of these arguments were inferences pertaining to the character of Bennett's conduct in the operation of his vehicle. We find these inferences could be drawn from the evidence and were within the limits of legitimate advocacy. *Sleeper* v. *Company,* 100 N. H. 158, 163. Others pertained to alleged misquotations of the evidence by counsel. The Trial Court instructed the jury to disregard any such statements and

to take their own recollection of the evidence. The Trial Court's denial of defendants' motions to set aside the verdicts implies a finding, sustainable in our opinion, that these arguments were not prejudicial to the complaining parties and the exceptions are overruled. *Glidden* v. *Brown,* 99 N. H. 323, 327.

*Judgment on the verdict.*

All concurred.