Strafford
No. 80-285

JAMES VATISTAS

v.

BETHANY HICKENS

June 10, 1981

*Fisher, Parsons & Moran,* of Dover (*Edward T. Clancy* on the brief and orally), for the plaintiff.

*Wiggin & Nourie,* of Manchester (*Steven E. Feld* on the brief and orally), for the defendant.

KING, J. The plaintiff, James Vatistas, brought a civil action for damages against the defendant, Bethany Hickens, for personal injuries and property damage resulting from a two-car automobile accident in which the parties were involved. At trial, the plaintiff sought to establish that the defendant was negligent, and the defendant relied upon the defenses of unavoidable accident and comparative negligence. Following the arguments and the judge's appropriate charge, the jury began its deliberations. After approximately one and one-half hours of deliberation, the jury requested that it be allowed to read the statutes pertaining to the accident. The following morning, rather than allowing the jury to read the statutes, the Court (*Randall,* J.) read to the jury RSA 262-A:15 A, RSA 262-A:24, and RSA 262-A:54 I. The jury then resumed its deliberations.

When the jury returned with its verdict, the trial court called counsel for both sides into chambers. There counsel removed the verdict form from the envelope and read it. The form was placed back in the envelope, and counsel left. Thereupon, the court examined the verdict and noticed that the jury had written "not guilty" on the form. Apparently concerned, the court attempted to call counsel back to chambers but discovered that they had left the court.

The plaintiff later filed a motion for a new trial on several grounds. The plaintiff specifically argued at that time that the jury's actions were improper and that its determination that the defendant was "not guilty" indicated that the jury had applied the beyond-a-reasonable-doubt standard of proof applicable in criminal cases to the plaintiff's civil suit against the defendant. At the hearing on the plaintiff's motion, the court indicated a willingness to poll each juror, all of whom were then serving on the jury panel, in order to determine whether the jury had acted improperly. The defendant's counsel was not present at the court but discussed the matter with the court by telephone and objected to the court's plan. The court then denied the plaintiff's motion. The plaintiff subsequently sought a rehearing. At the conclusion of the rehearing, the court again denied the plaintiff's motion for a new trial, and the plaintiff appealed.

■ The plaintiff argues that the "not guilty" language written on the verdict form by the jury presents an obvious inconsistency between the judge's charge and the jury verdict which the court should have cured by either polling the jury or granting a new trial. We agree.

■ Whether to poll the jury is a matter within the discretion of the trial judge, who may exercise the option as justice requires. *State v. Donovan,* 120 N.H. 603, 606, 419 A.2d 1102, 1104 (1980); *State v. Kenna,* 117 N.H. 305, 309, 374 A.2d 427, 430 (1977); *see Patten v. Newton,* 102 N.H. 444, 447, 159 A.2d 809, 811 (1960). The trial court has broad discretion in this regard, and we will not interfere with its exercise of that discretion in the absence of abuse. *State v. Donovan, supra* at 606, 419 A.2d at 1104; *Bothwick v. LaBelle,* 115 N.H. 279, 281, 339 A.2d 29, 32 (1975).

■ In cases where a miscarriage of justice may result, however, this court will examine closely the trial court's decision not to poll the jury. *See State v. Donovan, supra* at 606, 419 A.2d at 1104. Where it appears that the jury has misconceived its duty, it is the "imperative duty" of the court to take corrective measures. *Sigel v.*

*Boston & Maine R.R.,* 107 N.H 8, 27, 216 A.2d 794, 809 (1966). Because the jury's verdict form suggests that the jury may have applied the beyond-a-reasonable-doubt standard of proof to the plaintiff's case rather than the less-demanding preponderance-of-the-evidence standard, it was incumbent upon the court to poll the jury to resolve the uncertainty. *See Bothwick v. LaBelle, supra* at 281, 339 A.2d at 32. Indeed, the record indicates that the court was concerned enough that it sought to meet with counsel immediately upon its discovery of the problem and later indicated an intention to poll the jury. It was only because counsel were unavailable when the court first discovered the problem and because the defendant's counsel was unavailable on the day of the first hearing that the court failed to take some action, such as polling the jury, in order to clarify the jury's verdict. It is obviously impossible to poll the jury at this point. Therefore, the proper solution is to order a second trial.

The defendant argues that the plaintiff's request for a poll of the jury was untimely, because it came five days after the jury returned its verdict and the jury already had been discharged. The record indicates, however, that the members of the jury that decided the instant case were present in court on the day the court heard the plaintiff's motion and could have been polled at that time. Furthermore, the jury returned the verdict on a Wednesday, and the plaintiff filed his motion on the following Monday. Thus, the plaintiff's delay was really only two court days rather than five. The trial court has the power to reconvene and poll a jury when it appears that the jury has made a mistake which produced its verdict notwithstanding that the jury has been discharged. *Bothwick v. LaBelle, supra* at 281, 339 A.2d at 32. Because we conclude on the facts in this case that the trial court abused its discretion in failing to poll the jury, we remand this case for a new trial. In view of our decision on this issue, we do not address the plaintiff's other arguments.

*Reversed and remanded.*

All concurred.